# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                                   **CRIMINAL ACTION**

**VERSUS**

**REGINALD SPEARS, A/K/A RLS AR ABDUL AZIZ**          **NO. 09-0019-BAJ-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on December 7, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                 CRIMINAL ACTION

VERSUS

REGINALD SPEARS, A/K/A RLS AR ABDUL AZIZ           NO. 09-0019-BAJ-EWD

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the motion by Defendant Reginald Spears, a/k/a RLS Ar Abdul Aziz, to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (R. Doc. 275). The Government has filed an opposition (R. Doc. 294), and Defendant has submitted a response (R. Doc. 297). There is no need for oral argument or for an evidentiary hearing.

On May 24, 2004 Defendant was arrested by officers employed by the Baton Rouge Police Department on charges of possession of marijuana and crack cocaine. The charges incident to that arrest were later reduced by the state prosecutor, and Defendant was adjudicated on a single misdemeanor charge of simple possession of stolen things, for which Defendant was sentenced to six months of probation and a fine in the amount of $250.00.

Approximately five years later, in February 2009, Defendant was arrested and charged, based on a federal grand jury indictment arising out of the same 2004 arrest, with one count of possession with intent to distribute five grams or more of a substance containing cocaine base (also known as crack cocaine), a violation of 21 U.S.C. §§ 841(a)(1).[1] Defendant was thereafter

---

[1] A superseding indictment was later filed (R. doc. 45) on September 10, 2009 which added an additional Count II, possession of marijuana, a violation of 21 U.S.C. § 844(a). The United States later dismissed Count II of the superseding indictment.

represented at a detention hearing by attorney Kevin P. Monahan on March 5, 2009. Attorney Monahan subsequently withdrew, and Defendant thereafter pleaded not guilty and retained the services of attorney Peter Q. John to represent him in connection with the charged offense. After the filing of two motions to continue the scheduled trial by attorney John (R. Docs. 13 and 25), one of which was for the purpose of allowing for a proposed guilty plea that Defendant subsequently withdrew, attorney John filed a motion to suppress the evidence obtained during the 2004 arrest (R. Doc. 37). The basis for Defendant's motion was a contention that the narcotics seized during the arrest were the result of a search conducted without probable cause. After an evidentiary hearing conducted on December 2, 2009 at which the arresting officer testified, the Court denied the motion to suppress (R. Doc. 67).

At a status conference thereafter conducted on February 24, 2010, the Court expressed concern regarding the continued representation of Defendant by attorney John in light of a criminal indictment entered against the attorney in state court. *See* R. Doc. 77. As a result of proceedings incident to that concern, Defendant filed a request to substitute appointed counsel on his behalf by the Court (R. Doc. 83). Defendant's request in that regard was granted by the Court on April 6, 2010 (R. Doc. 85), and attorney Thomas C. Damico enrolled on Defendant's behalf. Attorney Damico thereafter filed another motion to continue the scheduled trial, which motion was granted by the Court on April 12, 2010, continuing the trial to a date to be set after a status conference between the parties and the Court. *See* R. Docs. 87 and 88.

On May 3, 2010, Defendant again moved to substitute counsel, this time for the purpose of enrolling retained attorney John-Michael Lawrence on Defendant's behalf (R. Doc. 90). Attorney Lawrence thereafter filed numerous defense motions, including a Motion for Bill of Particulars (R. Doc. 91), a Motion for Early Disclosure of Jencks Act and *Brady* Materials (R.

Doc. 92), a Motion to Set Bond (R. Doc. 93), and a Motion to Dismiss Indictment Due to Violation of Sixth Amendment Right to Confront (based upon the alleged destruction of evidence by the arresting officer) (R. Doc. 106). In addition, at a status conference conducted on May 26, 2010, attorney Lawrence requested an evaluation of Defendant's mental competency, and the Court directed that Defendant be evaluated by mental health professionals. *See* R. Doc. 101.

Pending a determination regarding Defendant's competency, Defendant moved in January 2011 to represent himself (R. Doc. 122), and attorney Lawrence moved to withdraw from representation based on that request (R. Doc. 123). Recognizing that no determination could be made on Defendant's request "because the defendant is currently being evaluated in a Bureau of Prisons facility to determine if he understands the nature of these proceedings and can assist counsel," the Court stayed proceedings pending receipt of the report on Defendant's mental competency. *See* R. Doc. 125. Notwithstanding, at a hearing conducted on March 31, 2011, the Court allowed attorney Lawrence to withdraw and appointed Assistant Federal Public Defender Richard M. Upton to represent Defendant at the competency hearing. *See* R. Doc. 134. At the subsequent competency hearing held on April 20, 2011, the Court found Defendant competent to proceed to trial and confirmed that Defendant wished to waive his right to counsel and to represent himself at trial. *See* R. Doc. 136. In addition, the Court set the matter for trial on June 26, 2011 and appointed attorney Upton to act as standby counsel to assist Defendant at trial. *See id.* On the same date, Defendant filed a *pro se* Motion to Dismiss the indictment for alleged violations of the Speedy Trial Act (R. Doc. 135). Finally, after the denial of that and other motions filed by the *pro se* Defendant and by the Government on June 2 and 14, 2011, *see* R. Docs. 172 and 173, the matter proceeded to trial as scheduled, and Defendant was found guilty of the charged offense.

After the jury trial, at the request of Defendant, the Court appointed attorney Upton, who had assisted Defendant as standby counsel at trial, to represent Defendant with post-verdict motions and with sentencing proceedings. *See* R. Docs. 192-93. The Court thereafter sentenced Defendant to 360 months in confinement on February 9, 2012.

Defendant, through appointed counsel Christopher Aberle, appealed his conviction and sentence and, on October 8, 2013, the United States Court of Appeals for the Fifth Circuit affirmed the conviction but remanded for re-sentencing under the Fair Sentencing Act of 2010 in light of the Supreme Court's intervening decision in *United States v. Dorsey*, ___ U.S. ___, 132 S.Ct. 2321 (2012). After a hearing conducted on March 14, 2014, the trial court re-sentenced Defendant to 262 months in confinement. Defendant again pursued an appeal of the trial court's determination, but the appeal was dismissed on June 5, 2014 pursuant to Defendant's motion.

On December 29, 2014, Defendant filed the instant motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 and asserts 9 enumerated claims, all of which relate to alleged ineffective assistance by his retained and appointed attorneys. These claims are interrelated and overlapping and can be grouped into categories as discussed below.

<u>Factual Background</u>

The basis for the charges against Defendant stem from his arrest on May 24, 2004. According to testimony adduced at the hearing on Defendant's Motion to Suppress Evidence, it appears that during the early morning hours of that date, officers employed by the Baton Rouge Police Department were searching in a high crime neighborhood of the city for a suspect believed to have been involved in the recent shooting death of a Baton Rouge Police officer. Officer Larry Walters testified that while patrolling the neighborhood, he observed a person standing next to a vehicle in an abandoned/vacant lot on Cadillac Street in that neighborhood and shined his search

light on the person, who immediately took off running.   A chase ensued, and Defendant was apprehended several blocks away on Ford Street by another officer.   Officer Walters testified that he arrived shortly thereafter and conducted a pat-down search of Defendant for potential weapons. Upon feeling what he believed to be a knife in Defendant's right front pocket, Officer Walters removed the object and, while he was doing so, a baggie containing marijuana fell from Defendant's pocket.   According to Officer Walters, Defendant was then placed under arrest for possession of marijuana, and a search incident to arrest was conducted, which led to the discovery of a "cookie" of crack cocaine in Defendant's left front pocket.   Officer Walters testified that he then walked with Defendant back to Defendant's vehicle on Cadillac Street and subsequently drove Defendant to the Fourth District Police station.   Officer Walters testified that Defendant's vehicle was towed from the location on Cadillac Street because the vehicle was locked and because Defendant did not have the keys in his possession.   The "cookie" of crack cocaine was later found to weigh approximately 22.3 grams.

Defendant contends that he did not possess either a knife or marijuana on the date in question and that he was subjected to a warrantless search without probable cause that led to the discovery of the crack cocaine for which he was charged.

<u>Legal Analysis</u>

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.   *United States v. Frady*, 456 U.S. 152, 166 (1982).   When a criminal defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that Defendant's conviction is fair and final.   *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).   "As a result, review of convictions under § 2255 ordinarily is limited to questions of constitutional or

jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Id.* This procedural bar, however, does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and are not procedurally barred by a failure to raise them on direct appeal).

The standard for determining whether a defendant has received effective assistance of counsel within the limits of the Sixth Amendment right to counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court recognized that the Sixth Amendment right to counsel is the right to reasonably effective assistance. The Court established a two-prong test for determining when reversal of a conviction is necessary to protect the defendant's Sixth Amendment right. "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defendant." *Id.* at 687. If the Court finds that either of these elements is not met, it must reject the claim.

In determining whether counsel was deficient, the Court has emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See, e.g., United States v. Fields,* 565 F.3d 290, 294 (5th Cir. 2009), *citing Bridge v. Lynaugh*, 838 F.2d 770 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Id.* Great

deference is given to counsel's exercise of professional judgment.  *Bridge v. Lynaugh, supra*, 838 F.2d at 773.

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland, supra*, 466 U.S. at 691.   If Defendant satisfies the first prong of the *Strickland* test, his motion nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623 (5th Cir. 1988).   To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for Defendant to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  *Strickland, supra*, 466 U.S. at 693.   Rather, Defendant must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  *Id*. at 694; *Harrington v. Richter,* 562 U.S. 86, 110 (2011).   A habeas defendant need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  *Harrington, supra*, 562 U.S. at 111-12. The likelihood of a different result must be substantial, not just conceivable.  *Id*.

The above showing is one that Defendant cannot meet in the instant case.

### Defendant's Claim No. One, That Attorney Peter Q. John Failed To Conduct An Adequate Investigation Before The Hearing On The Motion To Suppress Evidence, Is Without Merit

In Defendant's first assertion, presented as Claim No. One in his supporting Memorandum (R. Doc. 283), he contends that his retained attorney, Peter Q. John, failed to conduct an adequate investigation prior to the 2009 hearing on the Motion to Suppress Evidence.   Specifically, Defendant contends that he requested that attorney John hire an investigator to "visit the scene of Movant's May 24, 2004 arrest by the Baton Rouge Police, in an effort to locate potential witnesses"

and that, had attorney John done so, he would have learned of three witnesses who would have corroborated Defendant's assertion that the search of his person on that date was illegal and without probable cause.   In support of this assertion, Defendant has attached to the instant motion the notarized statements of three purported witnesses to his arrest and search on the referenced date.   *See* R. Docs. 275-2 at pp. 35-37.   Defendant asserts that he learned of these witnesses in June, 2013, nine years after the original arrest and two years after the conclusion of Defendant's federal trial, when his mother allegedly received a telephone call from one of the purported witnesses, Anthony Johnson.   Johnson allegedly advised Defendant's mother at that time that Johnson and another witness, James Drewry, had been with Defendant at Johnson's house on Cadillac Street immediately prior to the arrest and had observed, together with a neighbor, Sherry Hines, everything that happened.   According to the witnesses' notarized statements, they attest that the search of Defendant occurred on Cadillac Street, after Defendant was apprehended and returned in handcuffs to that location, and that the officers simply pushed Defendant down on the car and proceeded to go through his pockets, removing money and a plastic bag.   Defendant argues that had these witnesses been discovered and called to testify at the suppression hearing, they would have counteracted the testimony of the arresting officer (1) that during a pat-down search of Defendant upon his apprehension on Ford Street (not Cadillac Street), the officer felt what he believed to be a knife, (2) that while removing the knife from Defendant's right front pocket, a packet of marijuana fell to the ground, (3) that during a subsequent search incident to Defendant's arrest, crack cocaine was discovered in Defendant's left front pocket, and (4) that Defendant was then walked back to his vehicle on Cadillac Street and placed in the officer's unit.

The Court finds this claim to be without merit.   With regard to Defendant's assertion that attorney John failed to conduct an adequate investigation, Defendant makes the conclusory

assertion that had an investigator been retained, he would have discovered the identities of the three above-named witnesses and would have procured their cooperation in providing testimony at Defendant's suppression hearing.   There is no support for this assertion in the record, however. Defendant pointedly does not assert that he ever provided the names of these witnesses to his attorney as potential sources of information, and Defendant does not explain why he failed to provide their names or identities, particularly inasmuch as two of the witnesses assert in their statements that they were with Defendant immediately prior to the arrest.   Nor is it reasonable to believe Defendant's assertion that these witnesses simply happened to come forward in 2013, nine years after the arrest complained of.   Accordingly, in the absence of any indication that Defendant advised his attorney in 2009 as to what an investigator might have discovered by visiting the scene of an arrest that occurred at or near midnight in an abandoned/vacant lot five years earlier, the Court does not find it unreasonable for attorney John to have failed to conduct the referenced investigation.

A defendant "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010), *quoting United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland, supra*, 466 U.S. at 691.   In the instant case, Defendant has wholly failed to show that it was unreasonable for attorney John to refrain from hiring an investigator to visit the scene of a 5-year old arrest that occurred at midnight in a vacant lot, particularly where it appears that Defendant did not provide the identities of any purported witnesses or any substantive information regarding their potential testimony.   Further,

claims of uncalled witnesses are disfavored in any event, especially if the claim is unsupported by evidence indicating the witness' willingness to testify and the substance of the proposed testimony. *Gregory v. Thaler, supra,* 601 F.3d at 353. *See also Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985). To prevail on a claim based upon uncalled witnesses, a defendant must be prepared to name the witness, demonstrate that the witness would have testified, set out the content of the witness' proposed testimony, and show that the testimony would have been favorable. *Id.* Defendant does not allege in this case that he provided the names of the witnesses or the substance of their testimony to his attorney prior to the suppression hearing, and he does not allege – and nor do the witnesses' statements assert – that the witnesses would have been available or willing to testify on the date of the hearing in 2009. *See United States v. Ford*, 2012 WL 2120587, *6 (S.D. Tex. Jan. 24, 2012) (noting that there was "insufficient evidence … that the witnesses would have been available to testify"). Accordingly, his claim of ineffective assistance of counsel in this regard must fail.

Defendant's Claim No. 2, That Attorney Peter Q. John Refused To Allow
<u>Defendant To Testify At The Suppression Hearing, Is Without Merit</u>

As to this claim, Defendant contends that he expressed to attorney John a wish to testify at the suppression hearing conducted prior to trial. According to Defendant, attorney John denied this request, stating "I can't call you to testify because I did not prepare for that." *See* R. Doc. 283 at p. 8. Defendant does not assert that he made any further insistence that he be allowed to testify at the hearing.

A criminal defendant has a constitutional right to testify on his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987). This right is granted to a defendant personally and not to his attorney. *Id.* at 51. The Fifth Circuit has recognized, however, that a defendant may waive his

right to testify, and that defendants frequently do so upon the advice of counsel.   *See, e.g., Jordan v. Hargett*, 34 F.3d 310 (5th Cir. 1994), *vacated on other grounds*, 53 F.3d 94 (5th Cir. 1995). The Court has also held that, where the defendant contends that his counsel interfered with his right to testify, the "'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'"   *Sayre v. Anderson*, 238 F.3d 631 (5th Cir. 2001), *quoting United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000).   Therefore, Defendant is required to demonstrate in this case both that his attorney's performance was deficient and that he was prejudiced thereby.

With regard to whether Defendant's attorney rendered deficient performance by interfering with Defendant's right to testify, the courts have recognized that an attorney's decision whether to call a defendant to testify is "part of counsel's trial strategy" and is a "judgment call which should not easily be condemned with the benefit of hindsight."   *See United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002).   However, at the same time, "it cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice."   *Id*.   In the instant case, whereas Defendant contends that attorney John "refused" to allow him to testify at the suppression hearing, this is a conclusory assertion unsupported by anything other than Defendant's self-serving allegation and is not borne out by the record.   In contrast, attorney John has provided a signed Statement that is attached to the Government's Opposition to Defendant's motion in this case, and this Statement explicitly provides:

> As [Defendant's] attorney of record, the undersigned advised the defendant that it was not in his best interest to testify at the suppression hearing given the circumstances of his arrest, and considering his criminal history.   However, the defendant was advised that he had the right to testify if he wished to do so.   The undersigned simply offered legal advice and professional opinion based on the totality of the circumstances, a thorough investigation and review of the evidence, the defendant's criminal history, and discussions with the prosecutor, that it was not in his best interest to take the witness stand.

*See* R. Doc. 294-1 at p. 2.

Based on the foregoing, it appears clear that Defendant was not prevented from testifying and that he ultimately acquiesced in the advice of his attorney and did not take the witness stand based on that advice. This conclusion is further supported by attorney John's Statement wherein he asserts that Defendant had taken a highly active role in his defense and "could not be forced into doing any action he did not want to do." *Id.* Thus, the question becomes whether the attorney's advice and recommendation were sound trial strategy. *United States v. Mullins, supra* (acknowledging that when the record is that Defendant knew of his right to testify and wanted to do so, but counsel was opposed, and Defendant ultimately acquiesced in his lawyer's advice, "the only inquiry is whether that advice was sound trial strategy").

Defendant has offered information regarding what his proposed testimony at the suppression hearing would have been. Defendant asserts that he would have testified, in contrast to the arresting officer, that no pat-down search was conducted when Defendant was apprehended on Ford Street after the chase, that no knife or marijuana was discovered at that location, and that instead, the officer escorted Defendant – in handcuffs – back to Defendant's vehicle on Cadillac Street and there simply emptied Defendant's pockets without justification and without probable cause, looking for the keys to the vehicle. Notwithstanding, the Court finds that it was not unreasonable for attorney John to conclude that allowing Defendant to testify would be a mistake. Any potential benefit accruing to Defendant by taking the stand would surely have been counterbalanced by cross-examination regarding Defendant's prior criminal history. Further, the Court does not find it unreasonable, strategically, to have chosen to deny the prosecution a free initial opportunity to cross-examine Defendant at the suppression hearing, which opportunity

would have provided the Government with insight and preparation in advance of Defendant's potential testimony at trial. *See* R. Doc. 74 at p. 50 (where the trial judge noted at the suppression hearing that "sometimes counsel makes wise choices, like in a motion to suppress, to not allow his client to testify"). Finally, in the Court's view, Defendant has failed to show a reasonable probability, in hindsight, that his testimony at the suppression hearing would have had any impact upon the judge's conclusion, based on the testimony of the arresting officer, that the pat-down search of Defendant was conducted after his apprehension on Ford Street and that the pat-down search in fact uncovered a knife and marijuana in Defendant's pocket. Attorney John cross-examined the arresting officer, addressing the factual discrepancies in the officer's report and pointing out that the purported knife had been disposed of by the officer and could not be produced. Attorney John further argued that, in the absence of the purported knife, the report was misleading and the officer's testimony was highly questionable. Notwithstanding, the trial judge ultimately concluded that the officer's report was not in fact misleading and that it did not matter to him on which street the Defendant was searched. *See id*. at p. 53. Accordingly, Defendant has failed to demonstrate that his attorney's strategic decision to recommend against Defendant testifying at the suppression hearing was unreasonable or that it resulted in prejudice. In light of the undisputed evidence that Defendant was apprehended by police after running from them at night in a high-crime area, Defendant has failed to show that his testimony would have made a difference in the outcome of the proceedings. *See Sayre v. Anderson, supra* (5th Cir. 2001) ("Considering the overwhelming evidence of [Defendant's] guilt, we cannot conceive of anything [Defendant] could have said that would have provided any reasonable possibility of a different outcome"); *United States v. Mullins, supra* ("If [Defendant] took the stand his extensive criminal record and drug use would have come into evidence. The likelihood that the jury would credit the felon over the police

officer … does not meet the reasonable probability of a different outcome test. [The Court] can say only that his testimony might have persuaded, but not that there is a reasonable probability that it would have done so"); *United States v. Willis*, 273 F.3d 592 (5th Cir. 2002) (same).   Absent a showing of actual prejudice, therefore, Defendant has failed to demonstrate a valid claim of ineffective assistance of counsel relative to this issue.

Defendant's Claims Nos. Three, Eight And Nine, That Attorneys Peter Q. John,<br>Richard M. Upton, And John-Michael Lawrence Failed To File A Motion To<br>Dismiss The Indictment Based Upon Alleged Government Misconduct, Are Without Merit

In these claims, Defendant complains that each of the attorneys who represented him prior to trial provided ineffective assistance by failing to file a motion to dismiss the indictment based on purported misconduct by the Government in pursuing the instant prosecution.   According to Defendant, he informed each of his attorneys that the instant prosecution was motivated in part by discriminatory animus in response to Defendant's exercise of his First Amendment right to practice his religion.   Specifically, Defendant asserts that he is a Muslim and that in May 2006, he undertook to legally change his birth name, Reginald L. Spears, to the Muslim name "RLS Ar Abdul Aziz."   Defendant asserts that when he thereafter renewed his commercial driver's license in September, 2006, he changed it to reflect his Muslim name thereon, and this prompted agents with the Federal Bureau of Investigation to request information from the Baton Rouge Police Department relative to the May, 2004 arrest.   According to Defendant, there was an ongoing investigation by the F.B.I. in connection with potential terrorist activities involving the Muslim community in Louisiana at this time, including in the City of Baton Rouge, and the F.B.I. undertook to obtain information regarding the earlier arrest "for the purpose of indicting Movant in federal court" and obtaining his cooperation as an undercover informant.   *See* R. Doc. 283 at p. 11.   Defendant attributes the subsequent federal indictment and prosecution commencing in

February 2009 – for possession of cocaine with the intent to distribute – to this improper "mixed motive" connected with the exercise of his religious beliefs, *i.e.* with his name change in 2006, with his association with the Baton Rouge Muslim community in general, and with his subsequent travel to Morocco for an extended period of time in 2008.

The Court is not persuaded by Defendant's contentions in this regard. In the first place, as noted above, Defendant made a determination approximately two months prior to trial to represent himself in this case. He was granted leave to do so, and he thereafter filed numerous motions on his own behalf, including a motion to dismiss the indictment, albeit on other grounds. *See* R. Doc. 135. Defendant did not, however, move to dismiss the indictment for alleged government misconduct even though he apparently then had an opportunity to do so. Accordingly, having elected to represent himself but to not assert this claim, Defendant is unable to convince the Court that he suffered prejudice as a result of his attorneys' failure to assert this claim.

Further, and in any event, Defendant's claim that the prosecution was impermissibly based on an improper "mixed motive" would fail in any event. As explained by the United States Supreme Court in *United States v. Armstrong*, 517 U.S. 456 (1996):

> In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Of course, a prosecutor's discretion is subject to constitutional constraints. One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification. A defendant may demonstrate that the administration of a criminal law is directed so exclusively against a particular class of persons … with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection of the law. In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary.

*Id.* at 465-66 (citations and internal quotation marks omitted). The Court went on to state that selective prosecution claims are governed by "ordinary equal protection standards" and that, to establish discriminatory effect in a selective prosecution case, the claimant is required to show that "the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* Thus, he must be able to show that similarly-situated individuals *outside the claimant's protected group* (race or religion) have not been prosecuted for the same offense. *Id. See also Odeh v. United States*, 2015 WL 1442836, *9 (N.D. Tex. Mar. 30, 2015) (noting that a Muslim defendant asserting a selective prosecution claim would have been required to "show both (1) that 'similarly situated individuals' outside the protected group were not prosecuted, and (2) that the decision to prosecute was 'invidious or in bad faith, in that it rest[ed] on such impermissible considerations as race, religion or the desire to prevent his exercise of his constitutional right'").[2]

It is clear in this case that Defendant cannot meet the test outlined above. Defendant was prosecuted under a statute that criminalizes the possession of Schedule II narcotics with the intent to distribute same. The evidence was overwhelming that Defendant was in fact in possession of a substantial quantity of crack cocaine when he was arrested in May, 2004. His federal indictment and prosecution, therefore, were based upon such possession, not based upon the exercise of his religious beliefs. It is also beyond question that federal prosecutors actively and routinely pursue

---

2 Defendant relies on the case of *Pyke v. Cuomo*, 258 F.3d 107, 108 (2d Cir. 2001), in support of his argument that his allegations do not require him to plead or show disparate treatment of similarly situated individuals. To the contrary, the *Pyke* Court specifically acknowledged that a claim of selective prosecution in violation of the Equal Protection Clause requires pleading and evidence of disparate treatment of similarly situated individuals because of the deference afforded the executive branch in exercising its core function of prosecutorial decision-making. The Court then noted that, because the plaintiff's claim in *Pyke* was not one for selective prosecution, such a showing was not necessary.

criminal prosecutions against drug offenders under the subject statute without any discriminatory focus on the members of the Muslim community – Defendant's asserted protected group.   Thus, the mere fact that a federal investigation into potential terrorist activities in the Muslim community may have been ongoing during the pertinent time period in this case, or that Defendant's drug-related offense may have come to prosecutor's attention during such investigation, does not support a conclusion that Defendant's criminal prosecution was motivated by any improper discriminatory animus.   Nor does Defendant's contention that he was questioned by F.B.I. agents shortly after his arrest on the federal indictment or that he was purportedly offered a favorable deal if he agreed to be an undercover "mole" for the F.B.I.'s investigation into the Muslim community compel a different conclusion.   Accordingly, it appears clear that Defendant's claim of selective prosecution in this case was not viable and that, as in *Odeh v. United States, supra,* it was not deficient performance for Defendant's attorney's to fail to pursue this argument in a motion to dismiss the indictment.   *See also Abdulqader v. United States*, 2015 WL 1551080, *11 (N.D. Tex. April 7, 2015) (concluding that an attorney's decision not to pursue a selective prosecution argument on behalf of a Muslim defendant "was reasonable").

Defendant's Claim No. Four, That Attorney Peter Q. John Conducted A Deficient Cross-Examination Of Officer Larry Walters During The Suppression Hearing, Is Without Merit

In this claim, Defendant asserts that attorney John provided ineffective assistance during the suppression hearing by (1) expanding the scope of cross-examination beyond that of the direct examination by eliciting testimony and a hand-drawn depiction of the knife allegedly discovered during the arrest, (2) failing to point out a state statute calling for police officers to retain weapons obtained incident to an arrest, and (3) failing to impeach the officer with contradictions contained

in the officer's report regarding the street location of the pat-down search and the search incident to arrest, including a failure to introduce Officer Walters' police report at the suppression hearing.

Defendant's assertions in this regard are clearly without merit.   In the first place, the nature and scope of cross-examination is a matter clearly within the province of the discretionary and strategic decisions made by counsel, and there is no legal or factual basis for a finding of deficiency in this context.   Further, inasmuch as the existence of the knife allegedly felt by the arresting officer in Defendant's pocket during the pat-down search of May 24, 2004 was a critical element pertaining to the legality of Defendant's subsequent arrest, it was clearly within the scope of cross-examination for attorney John to question the officer about the knife and to elicit any details that the officer may have recalled regarding it.   Attorney John may have hoped that the officer would recall nothing about the knife or that the officer would provide details that contradicted his other testimony.   The fact that Officer Walters was able to provide a generalized description of the purported knife does not support a conclusion, in hindsight, that this line of questioning was unwarranted.

In addition to the foregoing, the Court finds that attorney John effectively challenged the arresting officer on cross-examination, pointing out the officer's failure to retain the purported knife as evidence after the arrest and addressing apparent inconsistencies between the officer's testimony and statements contained in his report regarding the location of the search and arrest. First, with regard to the officer's failure to retain the knife as evidence, the officer testified that (1) he did not consider the knife to be evidence because it was not used during the commission of the offense and it was not pertinent to any element of the offense charged, *i.e.,* possession of narcotics with intent to distribute, (2) it was not included with Defendant's personal possessions because parish jail officials would not have accepted or stored it, considering the knife to be contraband,

and (3) it could not be placed in Defendant's vehicle because the vehicle was locked and Defendant did not have or produce the keys.   According to Officer Walters, therefore, the officer disposed of the knife by depositing it in a dumpster located outside the precinct office.   Thus, the parties delved thoroughly into the alleged discovery of the pocket knife by the arresting officer and into the officer's explanation for its non-retention, and attorney John emphasized the failure of the officer to retain and produce the knife during his argument in support of the motion to suppress. Whereas Defendant now seeks to establish deficient performance on the part of attorney John in failing to point out a state statute, La. Code Crim. P. art. 225, that directs that "weapons" are to be taken from a person after arrest and delivered to a supervising official – and that it was not "standard procedure" to dispose of the knife – this Court is unable to conclude that the failure by attorney John to point out the referenced statute to the Court, to any degree of reasonable probability, had any effect upon the Court's ruling at the suppression hearing.   The Court clearly chose to accept the credibility of the arresting officer that a knife was in fact recovered from Defendant's pocket even though the knife was not retained after the arrest.

Defendant also complains that attorney John provided deficient performance in failing to impeach Officer Walters with inconsistencies between the officer's testimony during the suppression hearing and statements contained in the officer's written police report and in failing to introduce the police report.   Specifically, Defendant points to the officer's testimony during the suppression hearing that the pat-down search and subsequent arrest and search of Defendant occurred on Ford Street in Baton Rouge – after Defendant ran from police and was apprehended at that location – whereas the police report and the officer's written narrative indicate that the search and arrest occurred after Defendant was escorted back to his vehicle on Cadillac Street. *See* R. Doc. 275-2 at pp. 5-11.   Notwithstanding, it is clear from the record that attorney John did

in fact point out the noted discrepancies, and these inconsistencies were acknowledged and explained by the officer to the Court.    Specifically, the following questioning took place on cross-examination:

> Q:      Was he walked from the 4800 block of Ford Street to the 5400 block of Cadillac Street or was he taken by vehicle?
>
> A:      He was walked.
>
> Q:      Was he walked in handcuffs?
>
> A:      yes, he was.
>
> Q:      And to your knowledge, no one patted him down during that process?
>
> A:      I patted him down prior to walking him.
>
> Q:      Okay.   And it's at 5400 Cadillac that you started the pat – you conducted the pat-down; is that correct?
>
> A:      No, sir.  It was a mistake in my report.  I patted him down as soon as we stood him up.
> The reason in the mistake is because I quickly knocked out a report to have this person booked into Parish and to get back out on the street to continue to look for that cop killer, and I did not proofread the report to make sure that it was completely accurate as far as the locations.   So I did make a mistake in that one sentence, that I patted him down after he was taken into custody and then I walked him back to my unit.
>
> Q:      So the report should read that he was apprehended on Ford Street and then you patted him down and then you found a knife; is that correct?
>
> A:      Yes, sir.

*See* R. Doc. 74 at p. 32-33.   Thus, during cross-examination, attorney John directly addressed the noted discrepancies in the officer's report, and he also later characterized the report as "misleading" in his argument before the Court.   *See id*. at p. 53.   Notwithstanding, the Court disregarded the noted discrepancies and ultimately concluded that the report was not misleading and that it did not matter, for purposes of determining the validity of the search and arrest, on

"which street they searched him." *Id.* Thus, this Court finds that attorney John adequately pointed out the noted discrepancies between the officer's testimony and the report during cross-examination and that there was no deficient performance in this context.

Defendant's Claims Nos. Five And Six, That Attorney Richard M. Upton
Failed To File A Motion For New Trial Based On A Speedy Trial Violation And Attorney
Christopher Aberle Failed To Present This Issue On Appeal, Are Without Merit

Defendant next complains that his post-trial attorney and appellate attorney provided ineffective assistance by failing to effectively present to the respective trial and appellate courts, in a post-trial motion for new trial and/or a designation of issues on appeal, the issue of a purported Speedy Trial Act violation.    The Court finds this claim to be without merit.

The Speedy Trial Act, codified at 18 U.S.C. § 3161, provides generally that "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." *See* § 3161(c)(1). The Act further provides, however, that certain periods are excludable from the speedy trial calculation, including *inter alia* delays "resulting from any proceeding, including any examinations, to determine the mental competency … of the defendant," delays "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," and delays "resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government." *See* § 3161(h)(1) – (8). The statute further provides that the trial court may grant a continuance and suspend the running of the speedy trial act upon a consideration of several designated factors, including the complexity of the case, and upon setting forth reasons in the record, orally or in writing, why it considers "that the

ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  *See* § 3161(h)(7)(A).

Prior to trial, and while representing himself, Defendant filed a *pro se* motion to dismiss the indictment based upon an alleged violation of the Speedy Trial Act.  *See* R. Doc. 135.  Thus, this issue was squarely presented to the trial judge in a pre-trial motion.  That motion was considered by the Court and addressed in substantial detail, both orally and in writing, prior to trial.  *See* R. Doc. 173 and R. Doc. 246 at pp. 24-27.  In denying that motion, the Court noted that at a hearing previously conducted in December, 2009 the Court had explicitly determined, with the express acquiescence of both the Government and Defendant's counsel and upon a consideration of the factors set forth in § 3161(h)(7)(B), that the complexity of the procedural issues in the case warranted a suspension of the speedy trial clock.  *See* R. Doc. 74 at pp. 57-61.[3] The Court further noted that numerous defense motions had been filed during the course of proceedings in the case (both by counsel and *pro se*) that interrupted the time calculation, that there were delays attributable to a determination of Defendant's competency, and that there were numerous additional procedural complications, including specifically the need for multiple attorneys, both retained and appointed, to withdraw from representation of Defendant at different times during the proceedings.  Thus, the Court concluded, in a well-reasoned Ruling (R. Doc. 173), that there was no violation of the Act.[4]

---

3 The suspension of the speedy trial clock was again noted by the Court on at least one other occasion, again without any objection noted by Defendant.  *See* R. Doc. 86 at p. 21 ("We've already suspended the Speedy Trial Act because of what happened with the first attorney …. So the clock has been suspended").

4 Although the parties focus upon the characterization of the case by the trial court as "complex" to support the Court's suspension of the speedy trial deadlines, this Court finds that, in addressing this issue, the trial court in fact considered the entirety of 18 U.S.C. § 3161(h)(7) and ultimately concluded, upon a consideration of all of the pertinent factors as required by subsection

In addition to the foregoing, Defendant subsequently filed a post-trial *pro se* Motion for Reconsideration that was again addressed to the speedy trial issue, asking the Court to re-visit Defendant's arguments in support thereof. *See* R. Doc. 209. Whereas the Court denied that *pro se* motion (because Defendant was then represented by counsel), the Court granted leave to Defendant's attorney to pursue the motion "if it is based on the law and facts of this case." *See* R. Doc. 210. In response to the Court's directive, attorney Upton filed a motion to adopt Defendant's *pro se* motion but offered no further substantive elucidation. *See* R. Doc. 213. The Court subsequently denied Defendant's Motion for Reconsideration, *see* R. Doc. 221, and Defendant contends that it was deficient performance for attorney Upton to fail to file a "well pled" motion for new trial re-urging Defendant's arguments in support of his claim of a speedy trial violation.

Defendant's assertion in this regard must be rejected. Whereas he asserts that attorney Upton should have moved for a new trial, in order for Defendant to be successful on this claim, he must show that there is a reasonable probability that such a motion would have been granted. *Cf.*, *Shelton v. Quarterman*, 294 Fed. Appx. 859, 872 (5th Cir. 2008), *citing United States v. Rosalez-Orozco*, 8 F.3d 198 (5th Cir. 1993) ("In order to establish prejudice, Rosalez must show that [there

---

(7)(a) that "the ends of justice served by taking such action outweigh[ed] the best interest of the public and the defendant in a speedy trial." These factors subject to consideration by the trial court in making this determination included, "among others," not only the "complex" or unusual procedural nature of the case as set forth in clause (7)(B)(ii), but also whether, as stated in clause (7)(B)((iv), "the failure to [suspend the speedy trial deadlines] in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." A fair reading of the trial court's reasoning in determining to suspend the speedy trial deadlines supports a finding that the court correctly considered all of the pertinent factors in making that determination.

is] a reasonable probability that had counsel moved for a judgment of acquittal, the motion would have been granted"); *Burston v. Caldwell*, 506 F.2d 24 (5th Cir. 1975) ("The failure of petitioner's counsel to move for a directed verdict did not render [counsel's] assistance ineffective where there was ... no reason to believe that such a motion would be granted").   In the instant case, there is no reason to conclude that a motion for new trial filed by attorney Upton would have been granted. As noted above, Defendant had previously presented the speedy trial issue to the Court in a motion filed before trial, and the Court had denied the motion, concluding that it was "frivolous, [and] without merit."  *See* R. Docs. 135 and 173.   In ruling on Defendant's post-trial motion to reconsider the issue, the Court again concluded that the motion was without merit and that, for the most part, "[t]he issues raised in the motion for reconsideration are … issues previously raised in the original motion."  *See* R. Doc. 221.   The Court finds no basis in Defendant's contention that a motion for new trial addressed to this issue would have been successful.   Accordingly, the Court finds no deficiency in the failure of attorney Upton to file such a motion.

Turning to a consideration of Defendant's assertion that appellate attorney Christopher Aberle provided ineffective assistance by failing to raise as an issue on appeal the purported violation of the Speedy Trial Act, the Court similarly concludes that no deficient conduct has been shown.   The cogent and persuasive reasoning of the trial court in denying Defendant's original motion to dismiss the indictment on this ground provides ample support for concluding that the issue was not likely to succeed on appeal.   In addition, Defendant has attached to the instant Motion to Vacate an excerpt from a letter written to him by attorney Aberle, *see* R. Doc. 275-2 at p. 25-26, wherein attorney Aberle again explains to Defendant why the speedy trial issue was not viable.   Considering that it is not deficient conduct for an attorney to fail to present on appeal an

issue that has little likelihood of success, the Court is unable to conclude that attorney Aberle provided ineffective assistance in connection with this claim.

<u>Defendant's Claim No. Seven, That Attorney Christopher Aberle Failed To Move</u>
<u>For A Remand To Expand The Record Based on Government Misconduct, Is Without Merit</u>

Finally, Defendant asserts that attorney Aberle provided ineffective assistance by failing to argue on appeal that the case should be remanded to the district court for expansion of the record to bolster his claim regarding alleged governmental misconduct. This claim is clearly without merit. As discussed above, Defendant has failed to sufficiently assert a viable claim of selective prosecution, and the Courts have concluded that in the absence of a sufficient showing regarding the essential elements of such a claim, *i.e.,* both "discriminatory effect and discriminatory intent," there is no basis for the allowance of discovery or for a hearing in connection therewith. *See Abdulqader v. United States, supra*, 2015 WL 1551080, *11 *and cases cited therein* (denying discovery or a hearing in connection with a claim of selective prosecution).[5] Accordingly, the Court finds no deficient performance on the part of attorney Aberle in connection with this claim.

Based upon the foregoing, the Court concludes that Defendant has failed to establish the violation of his constitutional rights in connection with his conviction. Therefore, Defendant is not entitled to relief under 28 U.S.C. § 2255, and his application should be denied.

---

5 Although the Government, in its Response and Opposition to Defendant's Motion to Vacate, makes reference to other claims purportedly raised by Defendant herein, *see* R. Doc. 294 at p. 14, the Government provides no record citation to such claims, and the Court does not interpret Defendant's Motion as asserting such additional claims that are not specifically designated as such, including any claim relative to purported discovery violations.

<u>Certificate Of Appealability</u>

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Defendant has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a habeas defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  In cases where the Court has rejected a defendant's constitutional claims on substantive grounds, a defendant must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In the instant case, the Court finds that reasonable jurists would not debate the denial of Defendant's § 2255 application or the correctness of the substantive ruling.  Accordingly, it is appropriate that, in the event that Defendant seeks to pursue an appeal in this case, a certificate of appealability be denied.

<u>RECOMMENDATION</u>

It is recommended that Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 be dismissed, with prejudice.  It is further recommended that, in the event that Defendant seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on December 7, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**